## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICK ANTOON, JR., individually and on behalf of all others similarly situated, c/o Kessler Topaz Meltzer & Check LLP 280 King of Prussia Road Radnor, PA 19087, *Plaintiff*, <br><br> v. <br><br> SECURUS TECHNOLOGIES, INC., c/o Morgan, Lewis & Bockius LLP 77 West Wacker Dr. Chicago, IL 60601-5094, *Defendant*. | )<br>)<br>)  <u>**Case No.**</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY
SUBPOENA RESPONDENT ANDREW D. LIPMAN'S
MOTION TO QUASH SUBPOENA**</u>

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 2

BACKGROUND ................................................................................................................. 6

A.  *Antoon v. Securus Technologies, Inc* ...................................................................... 6

B.  The Subpoena and Lipman's *Ex Parte* Letters to the FCC .................................... 7

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ..................................................................................................................... 10

A.  Plaintiff's Subpoena Imposes an Undue Burden on Lipman and Attempts to
    Improperly Harass Lipman ................................................................................... 10

    1.  Plaintiff's Counsel Concedes That The Subpoena Seeks Irrelevant
         Documents and Oral Testimony ...................................................................... 10

    2.  The Subpoena Is An Improper Attempt To Harass Lipman And His Law
         Firm ................................................................................................................. 13

    3.  Plaintiff Has Not Sought the Information Through Party Discovery ................ 14

B.  Plaintiff's Subpoena Seeks Materials Protected by the Attorney-Client Privilege ............. 14

C.  The Subpoena Improperly Seeks Information Subject to Work Product Protection ........... 17

COMPLIANCE WITH LOCAL CIVIL RULE 7(m) .................................................... 19

CONCLUSION ................................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burlington Ins. Co. v. Okie Dokie, Inc.*,
  368 F. Supp. 2d 83 (D.D.C. 2005) .......................................................................9, 12

*Chruby v. Global Tel\*Link Corp.*,
  No. 5:15-cv-05136 TLB (W.D. Ark. filed June 15, 2015) .......................................11

*Coleman v. Am. Broad. Cos.*,
  106 F.R.D. 201 (D.D.C. 1985)...................................................................................5

*ColonialBancGroup, Inc. v. PricewaterhouseCoopers LLP*,
  110 F. Supp. 3d 37 (D.D.C. 2015)...........................................................................12

*Curro v. Watson*,
  884 F. Supp. 708 (E.D.N.Y. 1995) .............................................................................8

*Doe v. Cabrera*,
  139 F. Supp. 3d 472 (D.D.C. 2015) ....................................................................14, 16

*E.E.O.C. v. Lutheran Soc. Servs.*,
  186 F.3d 959 (D.C. Cir. 1999)..................................................................................17

*First Am. Corp. v. Al-Nahyan*,
  No. 96-MS-24, 1996 WL 170121 (D.D.C. Mar. 26, 1996) ....................................18

*Flatow v. Isamic Republic of Iran*,
  202 F.R.D. 35 (D.D.C. 2001)....................................................................................10

*\*Global Tel\*Link v. FCC*,
  859 F.3d 39 (D.C. Cir. 2017) ........................................................................... *passim*

*Global Tel\*Link v. FCC*,
  No. 15-1461 and consolidated cases, Doc. 1686323 (D.C. Cir. July 28, 2017) .......5

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Serv. Ctr. of Haverstraw, Inc.*,
  211 F.R.D. 658 (D. Kan. 2003)...................................................................................9

*Hall v. United States*,
  371 F.3d 969 (7th Cir. 2004) ......................................................................................5

*\*Harris v. Koenig*,
  No. 02-618 (GK/JMF), 2010 WL 4910261 (D.D.C. Dec. 2, 2010).........................14

*In re Sealed Case*,
    146 F.3d 881 (D.C. Cir. 1998) ........................................................................17

*In re Subpoenaed Grand Jury Witness*,
    171 F.3d 511 (7th Cir. 1999) .........................................................................16

*Micro Motion, Inc. v. Kane Steel Co.*,
    894 F.2d 1318 (Fed. Cir. 1990).........................................................................8

*Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*,
    197 F.3d 922 (8th Cir. 1999) ......................................................................9, 13

*Mojica v. Securus Technologies, Inc.*,
    No. 14-cv-5258 (W.D. Ark. 2014) ............................................................. *passim*

*Nesse v. Pittman*,
    202 F.R.D. 344 (D.D.C. 2001).......................................................................16

*Phillips & Cohen, LLP v. Thorpe*,
    300 F.R.D. 16 (D.D.C. 2013).................................................................8, 10, 11

*Shelton v. Am. Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ...................................................................13, 15

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
    276 F.R.D. 376 (D.D.C. 2011).................................................................. *passim*

*United States v. Naegele*,
    468 F. Supp. 2d 165 (D.D.C. 2007) ...............................................................16, 17

*United States v. Nixon*,
    418 U.S. 683 (1974)......................................................................................5

*Watts v. S.E.C.*,
    482 F.3d 501 (D.C. Cir. 2007) ...............................................................9, 10, 14

**STATUTES**

Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.* ..............................6

Federal Communications Act, 47 U.S.C. § 201 *et seq.* ............................................................4, 5

**OTHER AUTHORITIES**

*Rates for Interstate ICS*, Report and Order and Further Notice of Proposed
    Rulemaking
    28 FCC Rcd. 14107 (2013).............................................................................4

*Rates for Interstate ICS*, Second Further Notice of Proposed Rulemaking,
    29 FCC Rcd. 13170 (2014) ..................................................................................................3

*Rates for Interstate ICS*, Second Report and Order and Third Further Notice of
    Proposed Rulemaking
    30 FCC Rcd. 12763 (2015) ..................................................................................................4

*Rates for Interstate ICS*, Order on Reconsideration
    31 FCC Rcd. 9300 (2016) ....................................................................................................4

Fed. R. Civ. P. 26 .............................................................................................. *passim*

Fed. R. Civ. P. 45 .............................................................................................. *passim*

Local Civ. R. 7(m) ..............................................................................................19

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii) and (iv), non-party subpoena respondent Andrew D. Lipman, Esq. of Morgan, Lewis & Bockius LLP ("Morgan Lewis") respectfully submits this memorandum in support of his motion to quash the subpoena Plaintiff Patrick Antoon, Jr. ("Plaintiff") served on Lipman on July 20, 2017.  Plaintiff's subpoena (the "Subpoena") is attached as Exhibit A.

The Court should grant this motion and quash the Subpoena for four separate and independent reasons:

*First,* Plaintiff seeks information and testimony that are wholly irrelevant to Plaintiff's claims in the underlying litigation pending in the U. S. District Court for the Western District of Arkansas.  Even under Rule 26(b)(1)'s liberal relevance standard, the information sought by the Subpoena fails to demonstrate any relevance.  Plaintiff's claims in the underlying litigation relate solely to *intra*state Inmate Calling Services ("ICS") and are based on state law.  The Subpoena, in contrast, seeks information relating to Federal Communications Commission (the "FCC") rulemaking, but the U.S. Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") ruled that the FCC only has jurisdiction over *inter*state ICS, which is not at issue in the underlying litigation, as opposed to *intra*state ICS.  Moreover, Plaintiff has publicly conceded that *inter*state ICS is irrelevant to its case in court documents filed in a U.S. District Court. Therefore, no plausible connection exists between the information Plaintiff seeks and the claims at issue in the underlying litigation.

*Second,* Plaintiff cannot establish that good cause exists to depose an attorney at a preliminary stage of the litigation, before Plaintiff has even sought the information at issue through party discovery.  At a bare minimum, the Court should postpone compliance with a subpoena of this kind to a later stage of the discovery process.

*Third*, Plaintiff seeks documents and testimony that are firmly protected by the attorney-client privilege. Plaintiff should not be permitted to abuse the discovery process to intrude on confidential communications between Attorney Lipman and a client. This is especially the case when Plaintiff's motivation to seek documents and testimony from Lipman, whose law firm represents the Defendant and who sits in a leadership position at that firm as Chairman of the Firm's Advisory Board, is pure harassment.

*Fourth*, Plaintiff seeks documents and testimony that are squarely protected by the work product doctrine. The *ex parte* letters at issue here were clearly written in anticipation of litigation, and the Subpoena improperly seeks Lipman's legal strategies and theories regarding that potential litigation.

For those reasons—and because the Subpoena is defective,[1] overbroad, and unduly burdensome—the Court should quash the Subpoena and grant this motion.

## INTRODUCTION

Plaintiff served a broad subpoena that requests Lipman, an attorney who is not a party to the underlying lawsuit pending in the U. S. District Court for the Western District of Arkansas, to produce extensive and intrusive attorney-client privileged and attorney work product documents and to sit for oral deposition about the contents of his client files and his client advice. Plaintiff served the Subpoena without first seeking any information sought by the Subpoena from the defendant in the underlying litigation, Securus Technologies, Inc. ("Securus"). The Subpoena contains six requests for production but does not identify any topics for Lipman's oral deposition. Presumably, the topics of oral deposition would be similar to the

---

[1] The Subpoena is facially deficient because the Subpoena fails to identify the issuing court, as required by Fed. R. Civ. P. 45(a)(1)(A)(i).

six requests for production.[2]  Half of the six requests on their express terms seek information

fully protected by both the attorney-client privilege and the work product doctrine because they,

on their face, seek the bases and rationale for why Lipman advocated certain advocacy positions

before the FCC.  The remaining three requests are equally impermissible because they seek

Lipman's client retainer agreement and the identity of and other intrusive information regarding

his clients, all of which are privileged in this context.

The Subpoena seeks information relating to *ex parte* letters, which are on the Public

Record, that Lipman wrote to the FCC in connection with the FCC's *WC Docket No. 12-375*

rulemaking period—a rulemaking addressing the regulation of ICS in 2014 and 2015.[3]

The timing of Plaintiff's service of the Subpoena is highly questionable and amounts to

an improper attempt to harass Lipman and his law firm, which firm represents the Defendant in

the underlying litigation.  Lipman is in a leadership position in such firm, being Chairman of the

firm wide Advisory Board.  Significantly, Plaintiff's lawyers represent a class of plaintiffs in a

separate case (also pending in the U. S. District Court for the Western District of Arkansas and

also pending before the same District Court Judge, the Honorable Timothy L. Brooks) involving

*inter*state ICS: *Mojica v. Securus Technologies, Inc.*, No. 14-cv-5258 (W.D. Ark. 2014).

Plaintiff's lawyers apparently became interested in Lipman's documents and oral testimony only

*after* the D.C. Circuit severely undermined the viability of the *Mojica* litigation when it very

---

[2] The Subpoena does not expressly identify proposed oral deposition topics. *See infra* note 10.  Thus, to the extent Lipman's proposed deposition is open-ended and not confined to the topics addressed in the Subpoena's document requests, Lipman is potentially exposed to even greater harassment and the potential for broad, impermissible inquiry into privileged areas is even greater.  The Subpoena should thus be quashed for this additional reason.

[3] *See Rates for Interstate Inmate Calling Services*, Second Further Notice of Proposed Rulemaking, 29 FCC Rcd 13170 (2014) (seeking comment on, among other topics, payments to correctional facilities, the FCC's legal authority to restrict the payment of site commissions, and ICS rate cap calculations).

recently issued *Global Tel*Link v. FCC*, 859 F.3d 39 (D.C. Cir. 2017) (attached as Exhibit B) on

June 13, 2017.[4]

    *Global Tel*Link* undercut the *Mojica* plaintiffs' core argument that Securus's payment of

site commissions on interstate ICS calls was unjust and unreasonable under the Federal

Communications Act, 47 U.S.C. § 201 *et seq.* (the "FCA").  On July 11, 2017, the *Mojica* Court

administratively stayed all proceedings and deferred ruling on all pending motions due to the

*Global Tel*Link* decision. *See Mojica*, Op. & Order, ECF No. 338 (attached as Exhibit C).  As

the *Mojica* Court explained at the parties' July 7, 2017 pretrial conference, *Global Tel*Link*

"affects the whole landscape of the case."  Transcript of Pretrial Hearing, at 113:4-5, *Mojica*

(July 7, 2017) (cited portion attached as Exhibit D).  The *Mojica* Court's stay order further noted

that *Global Tel*Link* "would appear to cast serious doubt onto the viability of the theory of

liability as to site commissions that Plaintiffs advanced in support of class certification earlier

---

[4] *Global Tel*Link* involved a challenge to an ICS order issued by the FCC in 2015.  Between 2013 and 2016, the FCC issued three orders regarding ICS regulation: *Rates for Interstate ICS*, 28 FCC Rcd. 14107 (2013) (the "2013 Order"); *Rates for Interstate ICS*, 30 FCC Rcd. 12763 (2015) (the "2015 Order"); and *Rates for Interstate ICS*, 31 FCC Rcd. 9300 (2016) (the "2016 Order") (collectively, the "ICS Orders").  *See Global Tel*Link*, 859 F.3d at 48-49.

    The ICS Orders are related.  In the 2013 Order, the FCC concluded that interstate ICS rates must be cost-based, and set interim caps on the rates providers could charge for interstate ICS.  *See id.* at 48.  The FCC further opined that "site commission payments are not a compensable category of ICS costs because they are not costs that are reasonably and directly related to provision of ICS." 2013 Order ¶ 55.

    The FCC then set permanent caps for the same interstate ICS in the 2015 Order, which "supersede[d]" and "replace[d]" the 2013 Order. 2015 Order ¶ 10.  The FCC also purported to set caps for intrastate ICS.  *See id.* ¶ 9.  As to site commissions, the FCC repeated its view "that site commissions do not constitute a legitimate cost to the providers of providing ICS," and thus, the FCC did "not include site commission payments in the cost data [it] use[d] in setting the rate caps established in" the 2015 Order. *Id.* ¶ 118.

    In the 2016 Order, the FCC amended the caps it set in the 2015 Order, "to better allow providers to cover costs facilities may incur that are reasonably related to the provision of ICS." 2016 Order ¶ 1.  The FCC clarified that (i) correctional facilities likely "incur costs that are directly and reasonably related to the provision of ICS"; (ii) it is reasonable to expect providers to cover those ICS-related costs; and (iii) the payment of such ICS-related costs (*e.g.*, through site commissions) is a legitimate ICS cost that is recoverable through rates. *Id.* ¶ 12.

    In *Global Tel*Link*, the D.C. Circuit struck down the 2015 Order's attempt to regulate intrastate ICS, holding that its "proposed caps on *intrastate* rates exceed the FCC's statutory authority under the [Telecommunications Act of 1996]." *Global Tel*Link*, 859 F.3d at 45 (emphasis in original).  The D.C. Circuit also held that the FCC's exclusion of site commissions when setting rate caps was arbitrary and capricious. *See id.* at 55-57.

this year." Exhibit C, at 5.  The case was therefore stayed "until the resolution of any petition for

rehearing *en banc* that may be filed in . . . *Global Tel\*Link*." *Id.* at 6.[5]

The *Mojica* plaintiffs' claims are now on the brink of dismissal, and since the *Mojica*

outside counsel, not coincidentally, also represent Plaintiff in the underlying litigation, Plaintiff

is quite evidently attempting to use the Subpoena as a vehicle to improperly seek discovery of

Lipman and his law firm for use in *Mojica*.[6]  Simply stated, the Subpoena reflects Plaintiff's

lawyers' improper attempt to use *Antoon* to conduct last minute *Mojica* discovery.  At bottom,

the Subpoena represents Plaintiff's lawyers' improper vehicle to harass Lipman and his law firm.

Lipman acknowledges the justice system's entitlement to "every man's evidence," *United*

*States v. Nixon*, 418 U.S. 683, 709 (1974), but, of course, certain reasonable and well-established

limits must be imposed.  Lipman should not be required to testify to Plaintiff, an outsider to the

attorney-client relationship, about the intricacies of work that Lipman performed and legal

opinions that he provided to a client.  Such testimony clearly is not the typical grist for the

evidentiary mill—what was seen, heard, or done that affected these parties' rights.  The attorney-

client relationship is recognized as sacred.  *Hall v. United States*, 371 F.3d 969, 975 (7th Cir.

2004); *Coleman v. Am. Broad. Cos.*, 106 F.R.D. 201, 204 (D.D.C. 1985) ("The [attorney-client]

privilege is . . . one of the most sacred and absolute.").  Plaintiff's lawyers are not entitled to

violate that special relationship in hopes of finding support for arguments made in *Mojica*—a

---

[5] On July 28, 2017, a Petition For Rehearing En Banc Of Intervenors, The Wright Petitioners, was filed in the appellate court. *See Global Tel\*Link v. FCC*, No. 15-1461 and consolidated cases, Doc. 1686323 (D.C. Cir. July 28, 2017).

[6] In a misguided attempt to save their case, the *Mojica* plaintiffs' reply in support of their motion for partial summary judgment erroneously asserts that the *ex parte* letters constitute an admission by Securus that its rates and practices violated the FCA. *See Mojica*, Pls.' Reply, ECF No. 336, at 5-10 (July 5, 2017) (attached as Exhibit E).

separate case whose fact discovery deadline has long since passed,[7] and a case that may be soon terminated in the wake of *Global Tel*Link*.

Lipman, by and through his counsel, respectfully requests this Court to enter an Order quashing the Subpoena.

## BACKGROUND

### *A.* **Antoon v. Securus Technologies, Inc.**

Plaintiff has been imprisoned in Arkansas Department of Corrections facilities since March 2014. Am. Cmplt., ECF No. 23, ¶ 3 (attached as Exhibit F). Securus is an ICS provider that serves more than 3,400 public safety, law enforcement, and corrections agencies and over 1.2 million inmates throughout the United States. *See id.* ¶ 6. Plaintiff seeks to certify a class action composed of "[a]ll persons, who, while in Arkansas,[8] at any time on or after January 9, 2012, paid to use inmate calling services provided by Securus . . . from a correctional facility in Arkansas during a period of time when Securus paid the facility a commission of any type in connection with the intrastate calls." *Id.* ¶ 26. Plaintiff alleges that Securus "charged exorbitant rates and fees . . . for inmate's [*sic*] *intrastate* telephone calls." *Id.* ¶ 1 (emphasis in original). Plaintiff asserts two causes of action: (1) violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*; and (2) unjust enrichment, based on state law. *See id.* ¶¶ 36-41, 55-60.[9]

On March 6, 2017, Securus moved to dismiss and to stay discovery, and on May 15, 2017, the Court granted in part and denied in part Securus's motion to dismiss and denied

---

[7] The fact discovery deadline in *Mojica* was April 14, 2017. *See Mojica*, Final Case Mgmt. Order, ECF No. 189, at 2 (Feb. 9, 2017).

[8] The complaint is also brought on behalf of a putative class who made intrastate calls "while in Arkansas, California, Connecticut, Hawaii, Iowa, Indiana, Michigan, Nebraska, New Hampshire, South Carolina, and Vermont, at any time on or after January 9, 2014." *See* Exhibit F, ¶ 26 (defining the "Multistate UE Class I").

[9] The amended complaint includes four additional counts brought on behalf of an Illinois plaintiff and a Georgia plaintiff. *See* Exhibit F, ¶¶ 42-54, 61-88. The Court dismissed those four counts on May 15, 2017 due to a lack of personal jurisdiction. *See* Mem. Op. & Order, ECF No. 50, at 3-11.

Securus's motion to stay discovery.  On May 30, 2017, Securus answered Plaintiff's amended

complaint and moved for summary judgment.  On June 14, 2017, Plaintiff filed an Opposition,

and on June 20, 2017, Securus filed a Reply.  The *Antoon* Court has not yet ruled on Securus's

motion.  The parties have just begun fact discovery; thus far, Securus has produced only sixty-

five pages of documents.  Significantly, Plaintiff's discovery requests do not seek information

from or about Lipman or his law firm.

**B.**    ***The Subpoena and Lipman's* Ex Parte *Letters to the FCC.***

The Subpoena seeks documents and testimony[10] on the following topics:

- "[Lipman's] retainer agreement(s) and any Documents confirming [Lipman's] retention by any ICS provider(s) for services rendered . . . in connection with *WC Docket No. 12-375* . . . ." ("Request No. 1")

- Documents identifying "'certain clients with an interest in the regulation of [ICS]' on whose behalf [Lipman] submitted [his February 20, 2015 *ex parte* letter to the FCC]" ("Request No. 2")

- Documents identifying "'certain clients with an interest in the regulation of [ICS]' on whose behalf [Lipman] submitted [his October 15, 2015[11] *ex parte* letter to the FCC]" ("Request No. 3")

- "Invoices, billing records or other Documents reflecting any invoices [Lipman] sent to [Securus] for services rendered in connection with the following filings submitted by [Lipman] to the [FCC] in *WC Docket No. 12-375: Rates for Interstate Inmate Calling Services*:

    o   (i) Letter from A. Lipman to Secretary Marlene H. Dortch, FCC (dated February 20, 2015);

    o   (ii) Letter from A. Lipman to Secretary Marlene H. Dortch, FCC (dated September 28, 2015); and

    o   (iii) Letter from A. Lipman to Secretary Marlene H. Dortch, FCC (dated October 15, 2015)" ("Request No. 4")

---

[10] It is unclear what topics the Subpoena proposes for Lipman's deposition.  The Subpoena's notice page states that Lipman will be deposed about matters set forth in "Exhibit A."  "Exhibit A" provides a list of document requests but does not provide a list of deposition topics.  *See* Exhibit A, Subpoena Ex. A, at 11-13.

[11] Lipman submitted three letters to the FCC on October 15, 2015.  Of the three, two reference Lipman's representation of "certain clients with an interest in the regulation of [ICS]."  It is unclear which of the two are referenced in the Subpoena.

- "Documents supporting the positions advanced in [Lipman's] [February 20, 2015 *ex parte* letter to the FCC]" ("Request No. 5")

- "Documents supporting the positions advanced in [Lipman's] [April 8, 2015 *ex parte* letter to the FCC]" ("Request No. 6")

Collectively, the Subpoena seeks information regarding four *ex parte* letters, all of which have been in the Public Record for several years, written on the following days: February 20, 2015 (the "February 20, 2015 Letter"); April 8, 2015 (the "April 8, 2015 Letter"); September 28, 2015 (the "September 28, 2015 Letter"); and one of the two letters dated October 15, 2015 (the "October 15, 2015 Letter").

## LEGAL STANDARD

A court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). *See also Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18-19 (D.D.C. 2013) (quashing subpoena on grounds of relevance and undue burden); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 381 (D.D.C. 2011) (quashing subpoena served on non-party attorney, noting that "experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters") (citation omitted). The scope of discovery is governed by Rule 26, which permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A subpoena that seeks documents[12] that are not relevant to a claim or defense in the underlying action, and not reasonably calculated to lead to the discovery of admissible evidence, is unduly burdensome and as such, must be quashed. *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1324-25 (Fed. Cir. 1990); *Curro v. Watson*, 884 F. Supp. 708, 714 (E.D.N.Y. 1995). The onus of

---

[12] "Rule 45's privilege and undue burden standard . . . applies to both document and testimonial subpoenas." *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007).

demonstrating relevance lies on the party seeking discovery. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Serv. Ctr. of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003). Rule 45 further provides that a court must quash a subpoena when it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

One's status as a non-party is a factor that weighs against requiring disclosure. *See Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007) ("The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties."). Indeed, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in Rule 45 inquiry." *Id.* (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) (internal quotation marks omitted). Subpoenas must be confined to the disclosure of relevant information. *See Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 88-91 (D.D.C. 2005) ("[O]ne is presumed to have no need of a matter not relevant to the subject matter involved in the pending action.") (citation omitted).

While Rule 26 permits limited deposition discovery, "[i]t is clear from experience that pretrial discovery by depositions . . . has a significant potential for abuse." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). Because of this potential for abuse, the federal rules "confer[] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required." *Id.* (quoting *Seattle Times Co.*, 467 U.S. at 36); *see also Watts*, 482 F.3d at 507.

## ARGUMENT

**A.   *Plaintiff's Subpoena Imposes an Undue Burden on Lipman and Attempts to Improperly Harass Lipman.***

In analyzing whether a non-party subpoena respondent is subjected to an "undue burden," a court considers a number of factors, including "whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Phillips & Cohen, LLP*, 300 F.R.D. at 18 (citation omitted); *see also Flatow v. Isamic Republic of Iran*, 202 F.R.D. 35, 36 (D.D.C. 2001).   Courts also acknowledge that subpoenas seeking attorney depositions "present a 'unique opportunity for harassment.'" *Eastman Kodak Co.*, 276 F.R.D. at 381 (citation omitted).   Furthermore, "Federal Rule of Civil Procedure 26(b)(1)-(2) requires district courts in '[a]ll discovery' to consider a number of factors potentially relevant to the question of undue burden, including: . . . whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive'; and whether 'the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Watts*, 482 F.3d at 507 (quoting Fed. R. Civ. P. 26(b)(1)-(2)).

**1.   *Plaintiff's Counsel Concedes That The Subpoena Seeks Irrelevant Documents and Oral Testimony.***

Analyzing whether a subpoena imposes an undue burden on a non-party subpoena respondent, a threshold issue for courts to analyze is whether the discovery sought is relevant.

*See Phillips & Cohen, LLP*, 300 F.R.D. at 17-18 (quashing subpoena seeking "documents which are of no conceivable relevance in the context of the action now pending"). Here, Plaintiff seeks testimony and documents regarding Lipman's drafting of certain *ex parte* letters submitted to the FCC, but those letters have no relevance to the underlying litigation, which concerns matters solely related to *intra*state ICS. As the D.C. Circuit ruled within the past 60 days, ***the FCC only has jurisdiction over interstate ICS***. *See Global Tel\*Link*, 859 F.3d at 51-55. *Global Tel\*Link* thus provides the answer that Lipman's statements concerning *intra*state ICS have no bearing on the underlying litigation. Regardless of Lipman's statements in the *ex parte* letters, they have no bearing on the outcome of Plaintiff's claims, which are based solely on Arkansas state law and implicate only Securus's *intrastate* ICS.[13]

Even Plaintiff's own lawyers concede that the FCC's regulation of ICS is irrelevant concerning *intra*state ICS and made this admission in a lawsuit similar to *Antoon* that is also pending in the Western District of Arkansas. *See Chruby v. Global Tel\*Link Corp.*, No. 5:15-cv-05136 TLB (W.D. Ark. filed June 15, 2015). In *Chruby*, Plaintiff's counsel—the same counsel to Plaintiff and to the *Mojica* plaintiffs—recently opposed a motion to stay and admitted that "***[t]he D.C. Cir. Order is simply irrelevant to Plaintiffs' [state law] claims***." *Chruby*, Pls.' Resp. in Opp. to Def.'s Supp. Brief in Opp. to Pls.' Mot. for Class Cert., ECF No. 92, at 3 (June 28, 2017) (attached as Exhibit G) (emphasis added); *see also id.* at 1-2 ("If Plaintiffs were asking the Court in this case to certify classes bringing claims under the [FCA] in connection with intrastate calls, then the D.C. Cir. Order would be relevant to such claims. However, in the instant litigation, Plaintiffs are not pursuing claims under the FCA. Any decision by the D.C. Circuit Court regarding the propriety of the FCC's ratemaking methodology . . . has no bearing on

---

[13]To the extent Lipman's statements concern interstate ICS, discovery on that issue is also irrelevant because the *Antoon* lawsuit does not involve interstate ICS.

11

Plaintiffs' arguments in support of class certification. . . . ***Plaintiffs do not make a claim under the FCA, nor do Plaintiffs rely upon the 2015 FCC Order, or any other FCC order to establish liability or the elements necessary for class certification . . . .***") (emphasis added).  Plaintiff's counsel cannot plausibly claim in *Chruby* that the absence of FCA-based claims make proceedings related to the FCC rulemaking irrelevant while at the same time asserting here that the *ex parte* letters are somehow relevant to *Antoon*.

Plaintiff is attempting to use discovery in the *Antoon* lawsuit to fish for information and testimony that Plaintiff's counsel can somehow attempt to use in the separate *Mojica* lawsuit. This Court should not countenance Plaintiffs' counsels' improper gamesmanship and should not permit Plaintiff to probe into wholly unrelated matters that are not relevant to *Antoon* and are not likely to lead to relevant, admissible evidence.  *See, e.g.*, *Eastman Kodak Co.*, 276 F.R.D. at 383 (quashing subpoena served on non-party attorney because, among other reasons, the proposed discovery was "not important . . . to the issues at stake in the action") (citation omitted) (internal quotation marks omitted); *Burlington Ins. Co.*, 368 F. Supp. 2d at 88-91 (denying defendant's motion to compel production where discovery requests had "no conceivable bearing on the case"); *see also ColonialBancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 43 (D.D.C. 2015) (granting motion to quash regarding subpoena's document requests seeking materials with "attenuated relevance" to the claim at issue).  This is especially so when the target of the gamesmanship is a non-party subpoena respondent who is being requested to testify and provide attorney-client privileged documents and testimony.

If Plaintiff's lawyers wished to conduct discovery into Lipman's letters in *Mojica*, they had more than *two years*[14] to attempt to do so before discovery closed in *Mojica*.  Plaintiff and

_____

[14] The Court permitted the parties to commence discovery starting February 27, 2015. *See Mojica*, ECF Nos. 17, 37. Fact discovery closed on April 14, 2017. *See supra* note 4.

his lawyers cannot use an unrelated case to circumvent closed discovery in another case. *See Misc. Docket Matter No. 1*, 197 F.3d at 924-95 (affirming district court's quashing of subpoena served on non-party and noting that "appellants' counsel had the opportunity to ask questions relating to [the information sought by the subpoena] during [a prior] deposition, but failed to do so"). The Court should thus grant this motion and quash the Subpoena as to Plaintiff's request for documents and oral testimony.

### 2. *The Subpoena Is An Improper Attempt To Harass Lipman And His Law Firm.*

Furthermore, the Subpoena is nothing more than an attempt to harass Lipman and Morgan Lewis—the law firm representing Securus in both the underlying litigation and in *Mojica*. As shown above, Plaintiffs' lawyers face the imminent prospect of dismissal in *Mojica* in light of the D.C. Circuit's holding in *Global Tel\*Link*. Grasping to attempt to obtain leverage in a possible negotiated resolution in *Mojica* before losing the *Mojica* case on a dispositive motion, Plaintiff's lawyers served the harassing Subpoena on Lipman to attempt to pressure Morgan Lewis's client, Securus, into a less than commanding settlement posture. The Court should not approve such blatant abuse of the discovery process.

Lipman holds a leadership position at Morgan Lewis, serving as Chairman of the Firm's Advisory Board. That Plaintiff's lawyers are attempting to harass a Morgan Lewis attorney in this position reflects their unjustified and improper attempt to paint Securus's outside counsel's law firm in a negative light (again, in an obvious attempt to increase the prospect of a *Mojica* settlement). The Court should not countenance Plaintiff's lawyer's abusive tactics. *See, e.g., Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir. 1986) ("The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and

13

increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.").

###### 3.    *Plaintiff Has Not Sought the Information Through Party Discovery.*

Alternatively, even if this Court does not desire to reach a decision on the merits as to the propriety of the Subpoena at this time, the Court should quash the Subpoena as premature. Even if Lipman's testimony is relevant—which it is not—the Court must balance relevance against the consideration of whether less burdensome means are available. *See* Fed. R. Civ. P. 26(b)(1)-(2); *Eastman Kodak Co.*, 276 F.R.D. at 378 (noting that Fed. R. Civ. P. 26 "requires the Court to limit discovery when it . . . can be obtained from other more convenient, less burdensome, or less expensive sources"). Here, discovery has just begun in the underlying litigation. Plaintiff should first seek party discovery and attempt to obtain the information and testimony sought by the Subpoena before imposing an unnecessary burden on a non-party. *See Watts*, 482 F.3d at 508. That the Subpoena is an improper attempt to conduct *Mojica* discovery is further supported by the fact that none of Plaintiff's discovery served on Securus in *Antoon* thus far requested information about Lipman's letters or any information regarding Lipman or his law firm.

###### B.    *Plaintiff's Subpoena Seeks Materials Protected by the Attorney-Client Privilege.*

For independent reasons, the Court should also quash the Subpoena because it improperly attempts to intrude squarely on the attorney-client relationship. Where a subpoena seeks *only* privileged material, none of which could be discoverable, courts should quash a subpoena in its entirety. *See, e.g., Doe v. Cabrera*, 139 F. Supp. 3d 472, 478-79 (D.D.C. 2015) (finding that "the majority of the requests" served on non-party attorney "implicate the attorney-client privilege and are not reasonably calculated to lead to evidence demonstrating any impropriety"); *Harris v. Koenig*, No. 02-618 (GK/JMF), 2010 WL 4910261, at *3 (D.D.C. Dec. 2, 2010) ("[I]t is my practice to preside personally over depositions where I anticipate there will be objections on the

basis of work product and attorney-client privilege.  I cannot bring myself to spend the

taxpayers' money presiding over a deposition where I anticipate sustaining objection after

objection.").

Courts in this District have quashed subpoenas under similar circumstances.  For

example, in *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, a non-party attorney

moved to quash a subpoena "on grounds that the deposition will 'necessarily touch on

information protected by the attorney-client privilege and the work-product doctrine' and '[t]his

potential intrusion into protected information can and should be avoided.'"  276 F.R.D. at 377

(citation omitted).  The court agreed, quashing the subpoena because the discovery sought "may

be obtained from other more appropriate sources, and any benefit from deposing the petitioner is

outweighed by the burdens it will impose."  *Id.* at 379.  The court acknowledged that permitting

the deposition to proceed would "chill[] the free and truthful exchange of information between

attorneys and their clients."  *Id.* at 381.[15]

This Court should follow the *Eastman Kodak Co.* reasoning.  Here, the information does

not merely "touch on" information related to the attorney-client privilege, but that is apparently

the central and exclusive focus of the Subpoena.  All six of Plaintiff's document requests, on

their face, seek core privileged information, and Plaintiff's oral deposition of Lipman will

undoubtedly seek similar information that is fundamentally protected by the attorney-client

privilege.  Request No. 1 seeks Lipman's "retainer agreement(s) and any documents confirming

[his] retention by any ICS provider(s) for services rendered by [him] in connection with *WC*

---

[15] The court found the test established in *Shelton v. American Motors Corp.* inapplicable because the non-party
attorney was not the opposing party's trial or litigation counsel.  The *Shelton* test limited the deposition of opposing
counsel "to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the
information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3)
the information is crucial to the preparation of the case."  *Eastman Kodak Co.*, 276 F.R.D. at 379 (quoting *Shelton*,
805 F.2d 1323, 1327 (8th Cir. 1986)).  Even where a non-party attorney who is not opposing counsel is subpoenaed
for discovery, "some of the same concerns underlying *Shelton*" are involved.  *Id.* at 384.

*Docket No. 12-375*." Request Nos. 2 and 3 seek information regarding the identity of the client

Lipman represented during the FCC rulemaking.  Even if the identity and retainer agreements

regarding Lipman's clients in connection with *WC Docket No. 12-375* were relevant (which they

are not), that information is clearly privileged.  *See, e.g.*, *In re Subpoenaed Grand Jury Witness*,

171 F.3d 511, 514 (7th Cir. 1999) (applying privilege to identity of attorney's client where

client's identity would disclose what client wanted to keep confidential).

The remaining Requests also unquestionably seek privileged material.  Request No. 4

seeks "[i]nvoices, billing records or other documents reflecting any invoices [Lipman] sent to

[Securus]" in connection with three of the *ex parte* letters.  "[C]orrespondence, bills, ledgers,

statements, and time records which also reveal the motive of the client in seeking representation,

litigation strategy, or the specific nature of the services provided, such as researching particular

areas of law, fall within the [attorney client] privilege."  *United States v. Naegele*, 468 F. Supp.

2d 165, 171 (D.D.C. 2007) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999)).

The invoices at issue reveal the nature of the services Lipman provided, and are therefore

privileged.  *See Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001) (finding privilege

regarding invoices detailing the work performed for a client).

Requests Nos. 5 and 6 similarly seek privileged information.  Both requests ask Lipman

to produce "[d]ocuments supporting [his] positions" in the February 20, 2015 Letter and the

April 8, 2015 Letter.  The letters themselves are not privileged because they were sent to the

FCC and are publicly available in the FCC's Public Records.  But Lipman's work papers and

legal research used to prepare the letters were kept confidential and are not discoverable.  *See*

*Cabrera*, 139 F. Supp. 3d at 478-79.  It is inconceivable that these documents, and any oral

16

testimony about these documents, could not be privileged. They necessarily communicate legal

strategies and reasoning that has been maintained as confidential.

The Court should therefore quash the Subpoena in its entirety for this reason.[16]

### C.     The Subpoena Improperly Seeks Information Subject to Work Product Protection.

The Subpoena also improperly seeks protected attorney work product and should be

quashed for this independent reason. "[A] party may not discover documents and tangible things

that are prepared in anticipation of litigation" unless "(i) they are otherwise discoverable under

Rule 26(b)(1); and (ii) the party shows that it has a substantial need for the materials to prepare

its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

Fed. R. Civ. P. 26(b)(3). To resolve work product claims, courts ask "whether, in light of the

nature of the document and the factual situation in the particular case, the document can fairly be

said to have been prepared or obtained because of the prospect of litigation." *E.E.O.C. v.*

*Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (quoting *Senate of Puerto Rico v. U. S.*

*Dep't of Justice,* 823 F.2d 574, 586 n.42 (D.C. Cir.1987)). For work product protection to apply,

"the lawyer must at least have had a subjective belief that litigation was a real possibility, and

that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C.

Cir. 1998). "[L]itigation need not be actual or imminent; it need only be fairly foreseeable."

*Naegele*, 468 F. Supp. 2d at 172 (citation omitted).

Furthermore, "[t]he work product privilege generally encompasses two categories or tiers

of information. The first tier concerns 'fact' work product[,] [w]hereas the second tier involves

'opinion' work product which enjoys a 'more absolute' protection since one of its purposes 'is to

---

[16] If for some reason the Court does not quash the Subpoena in its entirety—which it should—then at a bare minimum, the Court should enter a protective order under Fed. R. Civ. P. 26 limiting Subpoena oral testimony and document production to non-privileged communications and information.

protect the work of the attorney from disclosure for the benefit of the attorney.'" *First Am. Corp. v. Al-Nahyan*, No. 96-MS-24, 1996 WL 170121, at *3 (D.D.C. Mar. 26, 1996) (citation omitted).

The Subpoena seeks material and testimony protected by the work product doctrine because Lipman's *ex parte* letters were unmistakably written in anticipation of litigation. The plain language of the letters themselves show that litigation was anticipated: *e.g.*, one of the October 15, 2015 letters expresses concern that potential FCC rules could result in correctional facilities and ICS providers' uncertainty regarding their obligations under existing contracts. It further states that "[t]hese disputes ***and resulting litigation*** will consume significant resources and cause instability in the system for years." (emphasis added).

Moreover, the plain language of Request Nos. 4, 5, and 6 seeks discovery about legal opinions that Lipman prepared for a client. As noted above, invoices (like those sought by Request No. 4) disclose in great detail what a lawyer did for a client, thereby revealing his or her mental processes. *See Nesse*, 202 F.R.D. at 356. And Request Nos. 5 and 6 seek "[d]ocuments supporting" Lipman's legal positions from two of the *ex parte* letters. Every one of those supporting documents necessarily involves Lipman's mental processes, legal research, and legal theories, tactics, and strategies. No basis exists for allowing a non-client to rummage pell mell through a lawyer's and law firm's files or to "pick his brain" through judicially sanctioned discovery (especially here, where the law firm is representing Securus in the underlying litigation). Were the law otherwise, trial lawyers could dispense with legal research and simply use depositions of lawyers who have grappled with similar issues on behalf of clients as a substitute for doing their own work. Finally, Plaintiff has shown no substantial need for the materials sought or that he could not obtain their equivalent without undue hardship.

18

Ultimately, Plaintiff's lawyers are not entitled to conduct a wide-ranging fishing expedition through Lipman's and the law firm's files in hopes of finding materials to bolster their position in a separate case—a case in which Lipman's law firm is counsel to Securus.[17]

## COMPLIANCE WITH LOCAL CIVIL RULE 7(m)

In accordance with Local Civil Rule 7(m), Lipman, by and through his counsel, called and emailed counsel for Plaintiff on August 3, 2017 in a good-faith attempt to determine whether there is any opposition to the relief sought, and if so, to narrow the areas of disagreement. Plaintiff's counsel opposes the relief requested in this motion.

## CONCLUSION

WHEREFORE, For the foregoing reasons, Andrew D. Lipman, Esq. respectfully moves this Court to enter an Order (1) quashing Plaintiff Patrick Antoon, Jr.'s subpoena for oral testimony and document production; and (2) relieving Lipman from any obligation under the Subpoena.

Dated: August 3, 2017                  Respectfully submitted,

**ANDREW D. LIPMAN, ESQ.**

By: _____

E. Andrew Southerling (Bar No. 497765)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel. 202.739.5062
Fax 202.739.3001
Andrew.Southerling@morganlewis.com

---

[17] On August 3, 2017, Lipman served objections to the Subpoena's requests for production. A copy of the objections is attached hereto as Exhibit H.

19

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of August 2017, a true and correct copy of the foregoing **Memorandum in Support of Andrew D. Lipman's Motion to Quash Plaintiff's Subpoena** was served on the following persons by the following methods of service:

Peter A. Muhic
Donna Siegel Moffa
Monique Galloway
Samantha Holbrook
Amanda Trask
James Maro
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, PA 19087
pmuhic@ktmc.com
dmoffa@ktmc.com
mgalloway@ktmc.com
sholbrook@ktmc.com
atrask@ktmc.com
jmaro@ktmc.com
*Via U.S. Mail and Electronic Mail*

Elizabeth B. Herrington
Megan Braden
Morgan, Lewis & Bockius LLP
77 West Wacker Dr.
Chicago, IL 60601-5094
Tel. 312.324.1445
Fax 312.324.1001
Beth.Herrington@morganlewis.com
Megan.Braden@morganlewis.com
*Via Electronic Mail*

Stephanie A. Joyce
Joshua A. Fowkes
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20006
Tel. 202.857.6081
Fax 202.857.6395
Stephanie.Joyce@arentfox.com
Joshua.Fowkes@arentfox.com
*Via Electronic Mail*

Amy C. Martin
Attorney at Law
P.O. Box 765
Fayetteville, AR 72702
theamymartin@gmail.com
*Via U.S. Mail and Electronic Mail*

Benjamin D. Brown
Robert A. Braun
Cohen Milstein Sellers Toll PLLC
1100 New York Ave. NW
Suite 500
Washington, DC 20005
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
*Via U.S. Mail and Electronic Mail*

Yechiel Michael Twersky
Peter R. Kahana
Berger Montague P.C.
1622 Locust Street
Philadelphia, PA 19103
mitwersky@bm.net
pkahana@bm.net
*Via U.S. Mail and Electronic Mail*

Robert L. Jones III
Kerri Kobbeman
Conner & Winters, LLP
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703
Tel. 479.582.5711
Fax 479.587.1426
bjones@cwlaw.com
kkobbeman@cwlaw.com
*Via Electronic Mail*

Woody Bassett
James M. Graves
Bassett Law Firm LLP
221 North College Avenue
P.O. Box 3618
Fayetteville, AR 72702
Tel. 479.521.9996
Fax 479.521.9600
WBassett@bassettlawfirm.com
JGraves@bassettlawfirm.com
*Via Electronic Mail*


By: _____
E. Andrew Southerling