**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ANDREW D. LIPMAN, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | |
| PATRICK ANTOON, JR., | ) ) | Case No. 17-mc-1892 (EGS) |
| Respondent. | ) ) ) | |

**MEMORANDUM OPINION**

**I. Introduction**

Pending before the Court are (1) petitioner Andrew Lipman's motion to quash a subpoena served on him by Patrick Antoon, Jr., plaintiff in an underlying action before the United States District Court for the Western District of Arkansas ("Western District of Arkansas"), Mot. Quash, ECF No. 1; and (2)Mr. Antoon's motion to transfer Mr. Lipman's motion to quash to the Western District of Arkansas, Mot. Transfer, ECF No. 2. Upon consideration of the motion to quash and the motion to transfer, the responses and replies, the applicable law, and the entire record, Mr. Antoon's motion to transfer shall be **GRANTED**, and this miscellaneous proceeding, including the pending motion to quash, shall be **TRANSFERRED** to the Western District of Arkansas.

1

**II. Background**

Mr. Antoon has been imprisoned in an Arkansas Department of Corrections facility since March 2014. Opp'n Transfer 3, ECF No. 5. He sued defendant Securus Technologies, Inc. ("Securus"), a company that provides Inmate Calling Services ("ICS") to "more than 3,400 public safety, law enforcement, and corrections agencies and over 1.2 million inmates," on behalf of similarly situated persons who were "charged exorbitant rates and fees" to use its ICS intrastate services. *Id.*

Mr. Antoon filed his complaint on January 9, 2017 in the Western District of Arkansas. The case was assigned to District Court Judge Timothy Brooks. *See Antoon v. Securus Techs., Inc.*, Civ. No. 5:17-cv-5008 (W.D. Ark.). Following the resolution of Securus' motion to dismiss, Mr. Antoon's surviving claims against Securus are for unjust enrichment and for a violation of the Arkansas Deceptive Trade Practices Act. Moffa Decl. ¶ 5, ECF No. 2-1. Discovery has been on-going since April 2017 and is scheduled to end in March 2018. *See Case Management Order* 2, ECF No. 53 (5:17-cv-5008). Currently pending before Judge Brooks are Securus' motion for summary judgment, ECF No. 52 (5:17-cv-5008), and its motion for a protective order regarding Mr. Lipman's nonparty subpoena, ECF No. 65 (5:17-cv-5008).

Mr. Antoon's case is the fourth of four related ICS cases before Judge Brooks.[1] *Mojica v. Securus Techs. Inc.* is one of these related cases against Securus for its *interstate* ICS practices. Civ. No. 14-5258 (W.D. Ark.) In both the interstate and intrastate cases against Securus, the parties are represented by the same counsel. *See* Mot. To Quash 13, ECF No. 1. The interstate ICS cases are scheduled for trial pending the *en banc* review of *Global Tel*Link v.* FCC, 859 F.3d 39 (D.C. Cir. 2017), which concerns the legality of the Federal Communications Commission's ("FCC") interstate ICS regulations. *Id.*

Mr. Lipman, the nonparty subpoena recipient, is a partner at Morgan, Lewis & Bockius, the law firm representing Securus in the underlying matter. Mot. Quash 3, ECF No. 1. He is also the Chairman of the firm's Advisory Board, a "leadership" position. *Id.* Mr. Lipman specializes in telecommunications work and was involved in providing comments to the FCC regarding its ICS rulemaking proceedings. Opp'n Quash 5, ECF No. 3. Mr. Lipman submitted the comments on behalf of himself and "clients with an interest in the provision of Inmate Calling Services." *Id.* (citing FCC Docket WC 12-375).

On July 20, 2017, Mr. Antoon served Mr. Lipman with a subpoena. Opp'n Transfer 4, ECF No. 5. The subpoena requests

---

[1] *See Chruby v. Global Tel*Link Corp.*, Civ. No. 15-5136 (W.D. Ark.); *Mojica v. Securus Techs. Inc.*, Civ. No. 14-5258 (W.D. Ark.); *In re Global Tel*Link Corp. ICS Litig.*, Civ. No. 14-5275 (W.D. Ark.).

documents and testimony in connection with the statements Mr. Lipman made to the FCC in *WC Docket No. 12-375: Rates for Interstate Inmate Calling Services*. The subpoena seeks six categories of documents:

> [1] [R]etainer agreement(s) and any documents confirming [Mr. Lipman's] retention by any ICS provider(s) for services rendered . . . in connection with *WC Docket No. 12-375: Rates for Interstate Inmate Calling Services*;
> [2] Documents sufficient to identify the certain clients with an interest in the provision of inmate calling services (ICS) on whose behalf [Mr. Lipman] submitted [his February 20, 2015] letter to . . . [the FCC];
> [3] Documents sufficient to identify the certain clients with an interest in the provision of inmate calling services (ICS) on whose behalf [Mr. Lipman] submitted [his October 15, 2015] letter to . . . [the FCC];
> [4] Invoices, billing records, or other documents reflecting any invoices [Mr. Lipman] sent to Defendant for services rendered in connection with the following filings submitted by [Mr. Lipman] to the [FCC] in *WC Docket No. 12-375: Rates for Interstate Inmate Calling Services*: [February 20, 2015 Letter; September 28, 2015 Letter; October 15, 2015 Letter];
> [5] Documents supporting the positions advanced in [Mr. Lipman's February 20, 2015 letter to the FCC] . . . .;
> [6] Documents supporting the positions advanced in [Mr. Lipman's April 8, 2015 letter to the FCC] . . . .

Subpoena 12-13, ECF No. 1-2.

Mr. Lipman subsequently moved this Court to quash the subpoena, arguing that the subpoena seeks irrelevant information and that it seeks information protected by the attorney-client

4

privilege and work product doctrine. Mot. Quash, ECF No. 1. Thereafter, Mr. Antoon moved to transfer Mr. Lipman's motion to the Western District of Arkansas. *See* Mot. Transfer, ECF No. 2.

**III. Analysis**

Federal Rule of Civil Procedure 45(f) states in relevant part:

> When the court where compliance [with a subpoena] is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances.

Fed. R. Civ. P. 45(f). According to the Advisory Committee Note accompanying the 2013 amendments to Rule 45, the "prime concern" in assessing whether "exceptional circumstances" exist to permit transfer, "should be avoiding burdens on local nonparties subject to subpoenas . . . ." Fed. R. Civ. P. 45(f) advisory committee's note. While "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions," "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation . . . if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion."[2] *Id.* To carry out this balancing test, courts in

---

[2] "If the motion is transferred, judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties." Fed. R. Civ. P. 45(f) advisory committee's note.

this Circuit have considered "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). Courts have also considered the goals of judicial economy and the avoidance of inconsistent results. *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014). "[T]he proponent of transfer bears the burden of showing that [exceptional] circumstances exist." Fed. R. Civ. P. 45(f) advisory committee's note.

Mr. Antoon argues that this Court should transfer Mr. Lipman's motion to quash because his arguments are based on the parties' "substantive allegations and defenses," with which the issuing court is more familiar. Mot. Transfer 2, ECF No. 2. Mr. Antoon further argues that transfer is warranted to avoid issuing inconsistent rulings and disrupting the issuing court's management of the underlying action. *Id.* Finally, Mr. Antoon argues that any burden on Mr. Lipman is negligible given that he is represented by the same law firm that represents Securus in the underlying action, and because Judge Brooks permits counsel to argue discovery motions by telephone. *Id.* Mr. Lipman counters that the motion to quash involves a "threshold application" of the attorney client-privilege and the work product doctrine, which are "legal question[s] separate from the underlying

litigation's merits." Opp'n Transfer 1-2, ECF No. 5. As a nonparty subpoena respondent located in the District of Columbia without a connection to the Western District of Arkansas, Mr. Lipman argues that he will be burdened if he has to argue his motion before the issuing court. *Id.* at 16-17.

The Court finds that the exceptional circumstances present weigh in favor of transferring the motion to quash because (1) the burden on Mr. Lipman is negligible and (2) consideration of the *Judicial Watch* factors militates strongly in favor of transfer. *See* 307 F.R.D. at 34.

### A. Transferring the motion to quash will not unduly burden Mr. Lipman

In determining whether exceptional circumstances exist to permit transfer, the Court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas." Fed. R. Civ. P. 45(f) advisory committee's note. Mr. Antoon argues that the burden on Mr. Lipman is "negligible" because he is represented by the same law firm that represents Securus and because the issuing court will preside over Securus' motion for a protective order concerning this very subpoena. Mot. Transfer 10, ECF No. 2. Mr. Antoon also notes that "Judge Brooks' case management procedures permit counsel to appear for discovery . . . hearings telephonically," a method of participation specifically contemplated by the Advisory Committee Notes to minimize the

burden that transfer could impose on nonparties. *Id*. Finally, Mr. Antoon states that any deposition of Mr. Lipman would occur in the District of Columbia, where it was originally noticed. *Id*. at 10-11. Mr. Lipman argues that his burden is not "negligible" because he is represented by different lawyers than those that represent Securus. Opp'n Transfer 16, ECF No. 5. He also asserts that because he and his attorney are based in the District of Columbia, he "should not be forced to litigate in the Western District of Arkansas—a district to which he has no connection." *Id*. at 17.

Mr. Lipman has not explained how he would be burdened by litigating the motion in the Western District of Arkansas. *See Duck*, 317 F.R.D. at 326 (transferring motion to compel in part because defendant "fail[ed] to identify any burden that might exist in arguing [its motion] before the [issuing district court]"). Further, Mr. Lipman, Chairman of Morgan Lewis, is represented by his own firm, the same "global" law firm that represents Securus. Mot. Quash 13, ECF No. 1. In this circumstance, "the general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes is significantly reduced" because Mr. Lipman is represented by a firm familiar with this litigation and the issuing court. *Judicial Watch*, 307 F.R.D. at 35. Moreover, Judge Brooks' case management procedures contemplate resolving

discovery disputes by telephone conference. *See* Case Management Order 4, ECF No. 53 (5:17-cv-5008). Therefore, there is a "strong possibility that [Mr. Lipman's] counsel will not even need to leave Washington, D.C. to litigate the motion." *Flynn*, 216 F. Supp. 3d at 49.

**B. Exceptional circumstances weigh in favor of transfer**

With regard to the *Judicial Watch* factors, only one of those factors—the short pendency of the underlying suit—weigh against transferring. The remaining factors support Mr. Antoon's argument. *See* 307 F.R.D. at 34. The underlying litigation has only been pending for about a year, which is much shorter than other cases warranting transfer. *See, e.g.*, *Duck v. SEC*, 317 F.R.D. 321, 324–25 (D.D.C. 2016) (over four years). C*ompare with Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 47 (D.D.C. 2016) (fifteen month pendency weighs against transfer). Furthermore, because *Antoon* has been recently filed, discovery has "just begun." Opp'n Transfer 4, ECF No. 5.

However, its relatively early stage is not dispositive. Transfer can be appropriate when it would "avoid interference with a time-sensitive discovery schedule issued in the underlying action." *Duck*, 317 F.R.D. at 325. In *Duck*, the mere nine months left to complete discovery warranted transfer to avoid disrupting case management. *Id.* at 325. Here, discovery is set to close in March 2018, two months from now. *See* Case

Management Order, ECF No. 53 (5:17-cv-5008). Therefore, there is a "real risk" that not transferring the motion could interfere with Judge Brooks' "streamlined procedure for resolving discovery disputes." *Flynn*, 216 F. Supp. 3d at 48. Thus, transferring the motion is necessary to avoid "disrupting the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45(f) advisory committee's note.

Consideration of the remaining *Judicial Watch* factors weighs in favor of transfer. 307 F.R.D. at 34. With respect to the underlying case's complexity, Mr. Antoon has only two relatively straightforward claims. While his case may not be complex on its own, the underlying suit is complicated because it is one of four related cases challenging ICS practices. The two interstate ICS cases have been pending before Judge Brooks since 2014 and are ready for trial after extensive discovery efforts. Moffa Decl. ¶ 12, ECF No. 2-1.

While Mr. Lipman argues that *Antoon* is distinct from the three pending ICS cases, *see* Opp'n Transfer 8-12, ECF No. 5, his arguments in his motion to quash indicate otherwise. *See* Mot. Quash 10-14, ECF No. 1. For example, Mr. Lipman argues that Mr. Antoon is using this subpoena to fish for information to be used in the related interstate case *Mojica*. *Id.* Moreover, there is a motion pending in *Mojica* that concerns the same information requested in the instant subpoena. Moffa Decl. ¶ 13, ECF No. 2-

1; *see* Mot. in limine, ECF No. 282 (*Mojica*, 14-cv-5258). As explained more thoroughly below, it is clear to this Court that any decision in *Antoon* could impact the other three cases pending before Judge Brooks, complicating the underlying suit.

Similarly, transfer is warranted to avoid the "risk of inconsistent results" in the underlying litigation. *Duck*, 317 F.R.D. at 316 (quoting Fed. R. Civ. P. 45(f) advisory committee's note). In *Duck*, transfer was warranted in part because there was a pending motion for summary judgment before the issuing court. Therefore, resolving the motion to compel could "create the potential for inconsistent or conflicting rulings." *Id.* at 324-25. So here too. Pending before Judge Brooks is Securus' motion for summary judgment and its motion for a protective order. *See* Mot. Protective Order, ECF No. 65 (5:17-cv-5008). The motion for a protective order was filed on the same day as Mr. Lipman's motion to quash and it puts forward identical arguments. *See id.*; Mot. Quash, ECF No. 1. Both motions argue that Mr. Antoon's subpoena requests irrelevant information in an effort to improperly obtain discovery for use against Securus in *Mojica*.

Mr. Lipman argues that there is no danger of inconsistent rulings because Judge Brooks has not ruled on the motion for a protective order. Opp'n Transfer 13, ECF No. 5. Not so. This Court's ruling could still disrupt Judge Brooks' management of

11

the case. It is clear that courts in this Circuit are concerned about the *potential* for inconsistent results. *See, e.g.*, *Wultz*, 304 F.R.D. at 46. If this Court resolved Mr. Lipman's motion to quash, its decision could conflict with Judge Brooks' resolution of the same arguments.

This danger is not limited to the motion for a protective order. Also pending before Judge Brooks are other nonparty respondents' motions to quash, which have already been transferred. *See* Moffa Decl. ¶ 8, ECF. No 2-1. Finally, Judge Brooks is reviewing similar discovery issues in the related ICS cases. Mr. Lipman's statements to the FCC—the statements at the heart of this subpoena—are the "subject" of a pending motion in limine in *Mojica*. Moffa Decl. ¶ 13, ECF No. 2-1; *see* Mot. in limine, ECF No. 282 (*Mojica*, 14-cv-5258); Subpoena, ECF No. 1-2. Given Judge Brooks' "familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation," he is better suited to make consistent determinations across all four cases. *Wultz*, 304 F.R.D. at 46.

Most importantly, Mr. Lipman's motion to quash raises multiple issues that are closely connected to the merits of the underlying case, the interstate ICS cases, and the more than a decade-long FCC ICS rulemaking proceeding. To illustrate, Mr. Lipman puts forward four arguments in support of his motion to

quash. *See* Mot. Quash, ECF No. 1-2. First, he argues that the information sought is "wholly irrelevant" to Mr. Antoon's claims in the underlying litigation. *Id.* at 1. Second, he argues that Mr. Antoon should seek the information through party discovery. *Id.* Third and fourth, he argues that the information requested is protected by the attorney-client privilege and the work product doctrine. *Id.* at 2. In opposing the motion to transfer, Mr. Lipman argues that his "primary" argument is that the subpoena requests material that is protected by the attorney-client privilege and the work product doctrine. Opp'n Transfer 8-12, ECF No. 5. He downplays his relevance arguments, arguing that the Court need not evaluate relevance. *Id.* at 1.

The Court disagrees, looking no further than Mr. Lipman's own motion to quash. *See* Mot. Quash 10-14, ECF No. 1. Mr. Lipman's first and most robust argument is that the subpoena seeks irrelevant documents and oral testimony. *Id.* He contends that Mr. Antoon is using the subpoena to improperly harass him as a partner and Chairman of Morgan Lewis, Securus' outside counsel. *Id.* at 13. Mr. Lipman further asserts that Mr. Antoon is improperly seeking discovery in *Antoon* to "fish for information and testimony . . . to use in the separate *Mojica* lawsuit." *Id.* at 12. Securus renews these same arguments in its motion for a protective order in the underlying case, highlighting their significance. *See* Mot. Protective Order 9-14,

13

ECF No. 65 (5:17-cv-5008). Furthermore, Mr. Lipman's written objections to the subpoena confirm that his primary argument is relevance. See Objections, ECF No. 1-9. The first and lengthiest objection to each of the six categories of subpoenaed documents is that the requested information is "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." *Id.* Only after Mr. Antoon moved to transfer did Mr. Lipman reorder his arguments, re-characterizing their primacy. Opp'n Transfer 1, ECF No. 5.

The centrality of the relevance assessment weighs in favor of transfer because determining whether information is relevant requires "nuanced legal analysis based on a full understanding of the Underlying Action." *Fed. Home Loan Mortg. Co. v. Deloitte & Touche, LLP*, 309 F.R.D. 41, 43 (D.D.C. 2015). As other courts in this Circuit have routinely recognized, "[r]uling on the subpoenaed documents' relevance would . . . require[] the Court to delve into the intricacies of the underlying dispute. Given the close relationship between the motion to quash and the merits of the complex underlying dispute, the issuing court [would be] in a better position to rule on the motion." *FDIC v. Galan-Alvarez*, 2015 WL 5602342 at *3 (D.D.C. Sept. 4, 2015). This Court has "limited exposure to and understanding of the primary action." *In re Disposable Contact Lens Antitrust Litigation*, 2017 WL 3704822 at *7 (D.D.C. May 18, 2017)(internal

quotations and citations omitted). In contrast, Judge Brooks is already "knee-deep in the nuances of the underlying litigation"; he is clearly "in a much better position than this Court to evaluate relevance." *Flynn*, 216 F. Supp. 3d at 47.

Finally, Mr. Lipman's argument that Mr. Antoon is using the subpoena to "improperly harass" him as Chairman of Morgan Lewis and "fish" for discovery to use in *Mojica* weighs in favor of transfer. Mot. Quash 10-14, ECF No. 1. Judge Brooks—who has been dealing with these same parties for four years—is familiar with "both the issues and the parties in the underlying action[s]," which "strongly counsels in favor of transferring [the] motion to quash . . . ." *Flynn*, 216 F. Supp. 3d at 48.[3]

## IV. Conclusion

For the foregoing reasons, Mr. Antoon's motion to transfer shall be **GRANTED**, and this miscellaneous proceeding, including the pending motion to quash, shall be **TRANSFERRED** to the Western District of Arkansas. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**January 3, 2018**

---

[3] Pursuant to the suggestion in the relevant Advisory Committee Note, this Court has consulted with Judge Brooks, and he has agreed to handle the motion to quash upon transfer. See Fed. R. Civ. P. 45(f) advisory committee's note ("Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.").